UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| TIMOTHY EDWARD LOPES,<br><br>    Plaintiff,<br><br>  v.<br><br>HENRY PHARRIS, PI TAU ELDERS,<br>INC., ZETA PSI FRATERNITY, INC.<br>AND WORCESTER POLYTECHNIC<br>INSTITUTE,<br><br>    Defendants. | CIVIL ACTION NO. |

## COMPLAINT AND DEMAND FOR A JURY TRIAL

### INTRODUCTION

1. This is an action for damages arising from severe and life-altering burn injuries sustained by Plaintiff, a resident of Portsmouth, RI, due to the negligent conduct of Defendants at a fraternity house affiliated with the Zeta Psi Fraternity, Inc. ("Zeta Psi") and regulated by Worcester Polytechnic Institute (WPI) on or about May 13, 2025 in Worcester, Massachusetts.

2. Defendants' negligent actions, including failure to supervise dangerous activities and breach of assumed duties, caused Plaintiff's catastrophic injuries. Plaintiff seeks compensatory damages, pre-judgment interest, and costs, exceeding $75,000, under the Court's diversity jurisdiction.

### JURISDICTION AND VENUE

3. This Court has jurisdiction under 28 U.S.C. § 1332(a)(2) because Plaintiff is a resident of and domiciled in Portsmouth, RI, Defendant Henry Pharris is a resident of Massachusetts,

    Defendant Pi Tau Elders, Inc. is a Massachusetts corporation, Defendant Zeta Psi is a New York corporation, and Defendant Worcester Polytechnic Institute is a Massachusetts educational institution, and the amount in controversy exceeds $75,000, exclusive of interest and costs

4. Venue is proper under 28 U.S.C. § 1391(b) because the events giving rise to this claim occurred in Worcester, Massachusetts, within this District.

## PARTIES

5. Plaintiff Timothy Edward Lopes is an individual domiciled in Portsmouth, Rhode Island, and a student attending Worcester Polytechnic Institute at the time of the incident.

6. Defendant Henry Pharris is an individual residing in Worcester, Massachusetts, a student and member of the Zeta Psi fraternity chapter at Worcester Polytechnic Institute.

7. Defendant Pi Tau Elders, Inc. is a Massachusetts corporation with a principal office in Foxboro, Massachusetts and is recognized as a tax-exempt social club under Section 501(c)(7) of the Internal Revenue Code. As a 501(c)(7) entity, Pi Tau Elders, Inc. exists solely to own, operate, and oversee the fraternity house at 32 Dean Street, Worcester, Massachusetts, for the exclusive use and benefit of Zeta Psi and its Pi Tau chapter at WPI.

8. Defendant Zeta Psi is a New York corporation and is recognized as a tax-exempt social club under Section 501(c)(7) of the Internal Revenue Code. Zeta Psi has substantial continuous contacts in Massachusetts, including operating, controlling, and supervising local chapters such as the one at WPI. Zeta Psi exercises significant control over its local chapters through its constitution, bylaws, rules, regulations, and educational programs, and maintains the right to discipline members and chapters.

9. Defendant Worcester Polytechnic Institute (WPI) is a private university organized under Massachusetts law, with its principal place of business at 100 Institute Road, Worcester, MA. WPI actively promotes Greek life as part of its campus community, exercises substantial control over fraternity activities and conduct, maintains a detailed regulatory framework governing fraternities, and has the authority to discipline fraternities and their members for policy violations.

## FACTUAL ALLEGATIONS

10. On or about May 13, 2025, Plaintiff, who was an invited guest, attended a social gathering at the Zeta Psi fraternity house located at 32 Dean Street, Worcester, Massachusetts, which was not open to the general public and not part of any charitable program of the Defendants.

11. The fraternity house is owned and managed by Defendant Pi Tau Elders, Inc., on behalf of Zeta Psi, and serves as the designated venue for fraternity-sanctioned activities, including the social gathering where the incident occurred and subject to policies, rules, and oversight by Defendant WPI.

12. During the party, fraternity members, including Defendant Pharris, negligently started and maintained an open fire in the backyard of the fraternity house, unintentionally failing to follow proper safety fire protocols due to inadequate training and oversight.

13. At the time of the incident, the fraternity chapter utilized designated members known as "risk managers" who were responsible for overseeing safety measures and ensuring that fraternity activities complied with applicable laws, regulations, and organizational policies. These risk managers were tasked with identifying and mitigating potential hazards, including but not limited to fire safety risks, during fraternity events.

14. The following members of Zeta Psi fraternity, Pi Tau Chapter, had knowledge of and/or contributed to the dangerous practices at the fraternity house, including the use of open fires without proper safety measures, which led to Plaintiff's injuries: Ethan Edmonson, Jonah Potter, Ryan Siepmann, Ryan Addeche, Trevor Bowen, Jesse Beers, Alexander Abrahamsen, Nicolas LeSieur, Ryan Hsu, Theo Sawyers, Ethan Wilson, Aidan Bryar, James Purnell, Charles Pavis, Kai Yawata, Henry Pharris, Ariel Shirzadi, Frank Almeida, Conor Doran, Jameson Courtney, Mason Basara, Oscar Ivy, Jacob DeCarlen-Bumiller, Joseph Baisley, Andrew Mitchell, Connell Paxton, Hayden Punsalon, Joseph Tully, Lucas Marchese, and Nicholas Sirota.

15. As members of the Pi Tau Chapter of Zeta Psi, these individuals had a duty to:

    a. Ensure that fraternity activities, including social gatherings, were conducted in compliance with applicable safety protocols;
    b. Identify and mitigate foreseeable risks, including the risks associated with fire-related activities;
    c. Enforce the fraternity's risk management policies and ensure that designated risk managers fulfilled their duties; and
    d. Prevent unsafe practices, such as the use of flammable accelerants, that created a foreseeable risk of harm to guests.

16. These individuals knew or should have known about the dangerous practice of starting fires at fraternity events, which had occurred on prior occasions at the chapter house. Despite this knowledge, they failed to take reasonable steps to ensure the safety of guests such as plaintiff, by:

    a. Failing to address or report unsafe practices to fraternity leadership or risk managers;
    b. Failing to enforce safety protocols to prevent the use of flammable accelerants; and
    c. Permitting a culture of unsafe behavior to persist within the fraternity.

17. By failing to take reasonable steps to address these foreseeable risks, the named fraternity members contributed to the conditions that caused Plaintiff's injuries.

4

18. The risk managers negligently failed to fulfill their duties by routinely allowing an open fire to be started and maintained without proper precautions, failing to prevent the use of flammable accelerants, and failing to implement or enforce basic fire safety protocols. Their negligence directly contributed to the hazardous conditions that caused Plaintiff's injuries.

19. Defendant Pharris, a fraternity member, negligently poured a highly flammable liquid believed to be denatured alcohol that was not intended or used as an alcoholic beverage, but rather as an accelerant, onto the fire while acting within the scope of his duties as a fraternity member and participating in fraternity-sanctioned activities, in a manner that unintentionally violated basic fire safety principles.

20. As a direct result, an enormous fireball erupted, enveloping Plaintiff and igniting his clothing, causing severe, life-altering burn injuries to substantial portions of his body.

21. Plaintiff was first transported to UMass Memorial Medical Center in Worcester via ambulance.

22. The Plaintiff underwent numerous painful procedures to address his severe burns, and his treatment is ongoing, with a prolonged recovery expected due to the life-altering nature of his injuries.

## ZETA PSI'S CONTROL AND RESPONSIBILITY

23. Defendant Zeta Psi exercises substantial control over its local chapters, including the WPI chapter, through various mechanisms including:

    a. A comprehensive constitution, bylaws, and rules governing chapter operations;
    b. Collection of membership dues from local chapter members;
    c. Regular meetings with local chapter officers;
    d. Educational programs and risk management policies;
    e. Requirements that all members abide by Zeta Psi's rules, regulations, membership criteria, and risk management training requirements;

  f. Power to discipline chapters and individual members;
  g. Authority to revoke chapter charters or suspend operations; and
  h. Promotion of itself as a single organization with chapters across North America.

24. Members of local chapters, including the WPI chapter, are considered and refer to themselves as members of Zeta Psi, not merely members of an independent local entity.

25. Zeta Psi was aware of the risks associated with social events and the particular dangers of open flames yet failed to implement adequate safety protocols.

26. Zeta Psi knew or should have known that similar dangerous activities had occurred at its chapters previously, creating a foreseeable risk of serious injury to guests like Plaintiff.

27. Zeta Psi and Pi Tau Elders, Inc. exercised direct control over the activities of fraternity members through formal rules, risk management policies, and supervisory oversight. Fraternity members, including the named individuals, were required to abide by Zeta Psi's policies and directives and their conduct was subject to discipline, supervision, and enforcement by Zeta Psi and Pi Tau Elders, Inc.

28. Zeta Psi and Pi Tau Elders, Inc. are vicariously liable for the acts and omissions of the named fraternity members, including Defendant Pharris, as these individuals were acting within the scope of their duties as members and representatives of the fraternity. The negligent actions of these individuals, including the failure to follow fire safety protocols and the use of flammable accelerants, were performed in furtherance of fraternity-sanctioned activities under the authority and supervision of Zeta Psi and Pi Tau Elders, Inc.

29. The relationship between Pi Tau Elders, Inc. and Zeta Psi is an intentionally structured arrangement in which Pi Tau Elders, Inc. acts on behalf of Zeta Psi to manage and maintain the fraternity house for the chapter's operations and activities, ensuring it serves

Zeta Psi's purposes and mission.

30. Despite being separate legal entities, they function as integrated parts of a single fraternity system:

    a. Pi Tau Elders, Inc. was incorporated specifically to acquire, own and maintain property for the exclusive use and benefit of the Pi Tau chapter of Zeta Psi;
    b. Pi Tau Elders, Inc.'s 501(c)(7) tax-exempt status as a social club confirms its primary purpose of facilitating the social activities of Zeta Psi members;
    c. The board of Pi Tau Elders, Inc. is comprised primarily or exclusively of Zeta Psi alumni who were once members of the fraternity;
    d. Pi Tau Elders, Inc. coordinates with Zeta Psi regarding property management decisions, house rules, and safety protocols;
    e. The fraternity house owned by Pi Tau Elders, Inc. prominently displays Zeta Psi insignia, letters, and branding, representing itself to the public as a Zeta Psi facility;
    f. Zeta Psi's constitution and bylaws recognize and incorporate local housing corporations like Pi Tau Elders as essential components of their chapter structure;
    g. Zeta Psi exercises control over which members may live in the fraternity house owned by Pi Tau Elders through its membership and leadership selection process;
    h. Pi Tau Elders, Inc. defers to Zeta Psi on disciplinary matters affecting house residents and has incorporated Zeta Psi's risk management policies into its housing rules; and
    i. Members living in the fraternity house pay dues to Zeta Psi while paying rent to Pi Tau Elders, Inc., creating a coordinated financial structure.

31. The coordinated financial and operational structure between Zeta Psi and Pi Tau Elders, Inc. created an integrated system where fraternity members acted under the authority of both entities, making Zeta Psi and Pi Tau Elders, Inc. responsible for the conduct of these members.

32. Courts have recognized that a national fraternity which exercises substantial control over its local chapters owe a duty of care to social invitees at chapter events. For example, in Brown v. Delta Tau Delta, 118 A.3d 789, 793 (Me. 2015), the court held that where a national fraternity "effectively handed over a residential building to a group of college

7

students," it "should have anticipated that alcohol-related parties on the premises would follow, as could the social problems that accompany such activities." The court found that a national fraternity's "intricate hierarchy of rules and regulations" and ability to discipline members created a legal duty to social invitees. The relationship between Zeta Psi and Pi Tau Elders exhibits even stronger indicia of control and integration than was present in Brown.

## WPI'S CONTROL AND RESPONSIBILITY

33. Defendant WPI exercises substantial control over fraternities operating on or near its campus, including Zeta Psi, through:

    a. A formal recognition process requiring fraternities to apply for and maintain "recognized" status;
    b. A detailed code of conduct and rules governing fraternity operations.
    c. Regular oversight by WPI staff specifically assigned to Greek organization affairs;
    d. Authority to investigate and discipline fraternities for violations of university policies;
    e. Power to revoke recognition and impose sanctions;
    f. Promotion of Greek life to prospective and current students as a valuable and regulated part of campus life; and
    g. Collection of data regarding fraternity activities and conduct.

34. WPI actively promotes Greek life as part of its campus community on its website, in recruitment materials, and during campus visits, portraying fraternities as well-managed, worthy organizations that enhance students' educational experience.

35. WPI had received prior reports of dangerous activities, at fraternities including Zeta Psi, but failed to take adequate corrective action.

36. WPI knew or should have known that inadequate supervision of fraternity activities, particularly those involving fire, created a foreseeable risk of serious injury to guests like Plaintiff.

37. Despite this knowledge, WPI failed to implement and enforce adequate safety measures for fraternity events where individuals like Plaintiff were invited.

38. Defendant Henry Pharris, along with other unidentified members of the Zeta Psi fraternity, acted negligently while performing activities consistent with their roles as fraternity members by creating a hazardous condition, including starting an open fire without adequate safety precautions and using a highly flammable substance without fully appreciating the risks involved.

39. Defendants Pi Tau Elders, Inc. and Zeta Psi failed to maintain a safe premises, supervise fraternity activities, train members on fire safety, or enforce fire safety protocols, while fraternity members, including Defendant Pharris, were acting within the scope of their duties and responsibilities under the supervision and control of Pi Tau Elders and Zeta Psi.

40. Defendant WPI failed to adequately regulate or oversee the Zeta Psi fraternity's activities, despite its authority to do so and its active promotion of Greek life to prospective students like Plaintiff, allowing unsafe conditions to persist.

41. Defendant WPI's involvement with fraternities and the social activities occurring therein, including the event at which Plaintiff was injured, does not directly accomplish WPI's charitable purpose, but rather constitutes commercial activity.

42. WPI's relationship with fraternities, including Zeta Psi, is primarily commercial in nature because, among other things:

    a. WPI actively promotes fraternity life as a marketing tool to attract prospective students and enhance its competitive position in the higher education marketplace;
    b. The social gathering at which Plaintiff was injured was not an educational event, contained no academic content, and was not part of WPI's curriculum or educational program;
    c. The fraternity gathering was a purely social activity unrelated to WPI's charitable education mission;

      d. WPI derives a substantial economic benefit from its relationship with fraternities by outsourcing student housing and social activities that would otherwise require university resources;

      e. WPI markets Greek life as a premium "student experience" that justifies its tuition rates and enhances its brand in the competitive higher education market;

      f. WPI's regulatory relationship with fraternities resembles a business licensing arrangement rather than direct charitable activity;

      g. WPI requires all fraternities to obtain commercial general liability coverage and name WPI as one of the insureds.

43. Plaintiff's damages include, but are not limited to, medical expenses, future medical costs, permanent disfigurement, lost educational and career opportunities, and severe emotional distress, totaling well in excess of $75,000.

## COUNT I: Negligence
*(Against All Defendants)*

44. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

45. Defendants owed Plaintiff a duty of care to maintain a safe environment and prevent foreseeable harm during fraternity activities.

46. Defendant Pharris breached this duty by negligently pouring a flammable liquid on an open fire, creating a dangerous fireball.

47. Defendants Pi Tau Elders, Inc. and Zeta Psi breached their duty by starting and maintaining the fire, as well as failing to supervise fraternity members, enforce safety protocols, provide adequate training on fire safety, or maintain a code-compliant premises.

48. Defendant WPI breached its duty by failing to adequately regulate or oversee fraternity activities despite actively promoting Greek life to prospective students, failing to enforce safety policies, and allowing dangerous conditions to persist at fraternities it recognized and regulated.

49. Defendants' breaches directly and proximately caused Plaintiff's severe burn injuries and

resulting damages.

## COUNT II: Premises Liability
### *(Against Pi Tau Elders, Inc. and Zeta Psi)*

50. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

51. Defendants Pi Tau Elders, Inc. and Zeta Psi owned, operated, controlled, and/or maintained the premises where Plaintiff was injured.

52. As owners and/or operators of the premises, these Defendants owed Plaintiff, a lawful visitor, a duty to maintain the premises in a reasonably safe condition and to warn of any dangerous conditions.

53. These Defendants breached their duty by, among other things:

    a. Allowing dangerous fire practices on the property;
    b. Failing to implement adequate fire safety protocols;
    c. Failing to properly supervise activities occurring on the premises;
    d. Failing to warn guests of the dangers associated with the fire;
    e. Allowing flammable liquids to be poured on an open fire; and
    f. Creating and/or allowing a dangerous condition to exist on the premises

54. These breaches directly and proximately caused Plaintiff's injuries and resulting damages.

## COUNT III: Negligent Supervision
### *(Against Zeta Psi and WPI)*

55. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

56. Defendant Zeta Psi owed a duty to supervise its local chapter and members to ensure they conducted activities in a safe manner and in compliance with applicable laws, regulations, and safety protocols.

57. Defendant WPI owed a duty to supervise fraternities it recognized and promoted, including Zeta Psi, to ensure they conducted activities in a safe manner and in compliance with applicable laws, regulations, and university policies.

58. These Defendants breached their duties by, among other things:

      a. Failing to implement adequate supervisory mechanisms;
      b. Failing to enforce existing safety protocols;
      c. Failing to monitor compliance with fire safety regulations;
      d. Failing to provide adequate training on fire safety;
      e. Allowing dangerous activities to occur without intervention;
      f. Failing to ensure that designated risk managers were adequately trained and supervised; and
      g. Allowing risk managers to neglect their duties to identify and address safety hazards.

59. These breaches directly and proximately caused Plaintiff's injuries and resulting damages.

### COUNT IV: Negligent Breach of Assumed Duty
*(Against Zeta Psi and WPI)*

60. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

61. Defendant Zeta Psi voluntarily assumed duties to regulate, supervise, and ensure the safety of activities at its local chapters, including the WPI chapter, through its constitution, bylaws, rules, educational programs, and oversight mechanisms. These duties required establishing and enforcing risk management policies, requiring the appointment of trained risk managers, and ensuring that local chapters implemented Zeta Psi's safety protocols at all events.

62. Despite assuming these duties, Zeta Psi negligently breached them by failing to provide adequate training to the WPI chapter's risk managers regarding fire safety and hazard mitigation, failing to enforce its own risk management policies that required risk managers to identify and correct dangerous conditions during events, failing to supervise or monitor the risk managers' activities to ensure compliance with Zeta Psi's safety standards, allowing the risk managers to neglect their duties by permitting an open fire to burn without proper safety measures and failing to prevent the use of flammable accelerants, and failing to intervene or take corrective action despite the foreseeable risks associated with fire-related activities at fraternity events.

63. Defendant Zeta Psi specifically required the WPI chapter to designate the risk managers who were responsible for identifying safety hazards, ensuring compliance with fire safety protocols, and preventing dangerous activities during fraternity events. Zeta Psi also assumed a duty to adequately train, supervise, and oversee the actions of these risk managers to ensure they fulfilled their responsibilities in protecting the safety of fraternity members and guests.

64. Defendant WPI voluntarily assumed duties to regulate, supervise, and ensure the safety of fraternity activities through its recognition process, code of conduct, dedicated staff, and promotional materials representing fraternities as regulated organizations that enhance the educational experience. WPI explicitly assumed these duties by requiring fraternities to have designated faculty/staff advisors, mandating compliance with all laws and safety regulations, requiring liability insurance that covers "all chapter officers, functions, and activities," and reserving the right to freeze or deactivate organizations that fail to meet its requirements. By creating this comprehensive regulatory framework and presenting it publicly, WPI assumed responsibility for ensuring reasonable oversight of fraternity activities.

65. These Defendants breached their assumed duties by failing to exercise reasonable care in fulfilling these obligations, allowing dangerous conditions and activities to persist.

66. Plaintiff reasonably relied on these Defendants' assumption of these duties when attending the fraternity event.

67. These breaches directly and proximately caused Plaintiff's injuries and resulting damages.

## COUNT V: Agency
*(Against Zeta Psi)*

68. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

69. At all relevant times, the named fraternity members, including Defendant Henry Pharris, and the risk managers, were acting as agents of Zeta Psi when conducting fraternity activities at the chapter house, including the event at which the Plaintiff was injured. These individuals were subject to the control and authority of Zeta Psi and Pi Tau Elders, Inc. in carrying out their responsibilities.

70. Zeta Psi manifested its consent that the Pi Tau chapter and its members would act on its behalf by:

    a. Granting the chapter authority to use Zeta Psi's name, symbols, rituals, and branding;
    b. Authorizing the chapter to recruit members for the national organization;
    c. Establishing and enforcing guidelines for chapter operations and risk management;
    d. Collecting dues from chapter members;
    e. Monitoring and supervising chapter activities through constitutional officers and chapter advisors;
    f. Exercising disciplinary authority over the chapter and its members; and
    g. Representing to the public that the chapter was an official part of Zeta Psi.

71. Defendant Pharris and other Pi Tau chapter members were subject to Zeta Psi's control regarding fraternity activities, including social events at the chapter house, as demonstrated by:

    a. Zeta Psi's authority to suspend, expel, or otherwise discipline chapter members for violations of its policies;
    b. Zeta Psi's right to revoke the chapter's charter;
    c. Zeta Psi's comprehensive constitution, bylaws, and rules governing chapter operations;
    d. The appointment and oversight of alumni advisors who serve as representatives of Zeta Psi within the chapter; and
    e. Zeta Psi's imposition of risk management policies and educational requirements on all members

72. The negligence of the named fraternity members, including the failure to enforce safety protocols, the use of flammable accelerants, and the maintenance of an open fire, occurred within the scope of their duties as agents of Zeta Psi and Pi Tau Elders, Inc. These

negligent acts were foreseeable and preventable through the exercise of reasonable supervision and enforcement by Zeta Psi and Pi Tau Elders, Inc.

73. The safety violations and negligent acts that caused Plaintiff's injuries occurred within the scope of this agency relationship and the fraternity members' duties because:

    a. The fire was held at a fraternity social event;
    b. The event was conducted at the fraternity house by active members of the fraternity;
    c. The event was consistent with the type of social activities Zeta Psi knew, promoted, and permitted its fraternity chapters to conduct; and
    d. The negligent acts that caused Plaintiff's injuries were foreseeable risks that Zeta Psi was aware of yet failed to prevent through reasonable supervision and enforcement of safety policies.

74. Zeta Psi knew or should have known about the specific dangers of fire-related activities at fraternity events, yet failed to exercise its control to prevent such hazardous conduct by fraternity members acting within the scope of their roles and responsibilities.

75. Zeta Psi is therefore liable for the negligent acts of its agents, Pi Tau chapter and Henry Pharris, that occurred within the scope of the agency relationship and which directly and proximately caused Plaintiff's severe injuries.

## PRAYER FOR RELIEF

WHEREFORE, as to all counts, Plaintiff respectfully requests that this Court:

A. Enter judgment in favor of Plaintiff on all counts;

B. Award compensatory damages in an amount to be determined at trial, exceeding $75,000;

C. Award pre-judgment interest at 12% per annum under M.G.L. c. 231, § 6B;

D. Award interest and costs;

E. Award all other damages which the Plaintiff is entitled to, as well as pre-judgment and post- judgment interests and costs; and

F.  Grant such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable

                                              Respectfully submitted,

                                              Plaintiff,
                                              Timothy Edward Lopes,
                                              By his Attorneys,

                                              */s/ Douglas B. Otto*
                                              Douglas B. Otto, Esq. (#555269)
                                              DarrowEverett LLP
                                              50 Congress Street, Suite 1040
                                              Boston, MA 02109
                                              T: (617) 443-4500
                                              dotto@darroweverett.com